McBRIDE, Judge.
This suit brought by Eugene C. Orgeron against the defendant for $23,350, allegedly sustained as a result of the death of his wife in the premises 514 Second Street, Gretna, Louisiana, on January 18, 1948, is one of the seven consolidated causes mentioned in the case of Gaida v. Hourgettes, La.App., 67 So.2d 737, an opinion and decree in which was handed down by us this day.
The plaintiff attributes the death of his wife to her asphyxiation.
*747 The evidence shows that Mrs. Eugene C. Orgeron, who- was a patient of Dr. Hinde-lang, had suffered from a heart condition characterized as angina pectoris, as well as a gall bladder complaint, for some time; prior to the date of her death. Her condition was of such gravity that Dr. Hindelang did not inform her thereof so as not to frighten her. At times she had been a bed patient.
Where a person is so afflicted that he will die from such affliction within a very short time, yet if by some accidental means his death is caused sooner, it will he a death from accident, and it follows that if a pre-existing disease brought to a crisis by accident authorizes a recovery for personal injuries resulting from the accident, it also authorizes a recovery from death resulting from the accident. See Walker v. Joseph P. Geddes Funeral Service, La.App., 33 So.2d 570, and the authorities cited therein.
However, plaintiff has failed to prove with the exactitude required by law that the death of his wife resulted from asphyxiation or that asphyxiation superin-duced death from the he,art condition.
The question whether Mrs. Orgeron died of carbon monoxide poisoning or from a heart attack depends entirely on Dr. Hinde-lang’s testimony. Dr. Robert Kelleher also testified for plaintiff, but this physician had never seen Mrs. Orgeron and merely gave answers to hypothetical questions propounded to him.
The consensus of the doctors’ testimony is that carbon monoxide confines hemoglobin of the blood cells so that the cells cannot properly carry oxygen. Dr. Kelle-her made the statement that heart patients are more susceptible to death from an oxygen insufficiency than are normal persons.
Dr. Hindelang’s testimony is to the effect that he believed Mrs. Orgeron died from a coronary insufficiency attributable to< a slowing down of the blood flow through the coronary arteries, which could have been brought on by the carbon monoxide gas poisoning, or by the excitement at 514 Second Street prevailing at the time, or by a combination of both. He stated that the inhalation of the gas was the probable cause of the death.
However, Dr. Hindelang cautiously stated! that he could not testify positively as tO' what caused Mrs. Orgeron to die as he did not have the benefit of an autopsy, one not having been performed upon the body.
Under these circumstances we are unable to hold that Mrs. Orgeron’s death resulted from the asphyxiation or that her inhalation of the monoxide gas accelerated her death from the pre-existing heart ailment. If plaintiff is allowed to recover, the recovery would rest solely on conjecture.
Therefore, the judgment appealed from dismissing plaintiff’s suit is affirmed.
Affirmed.
REGAN, J., concurs.